644 A.2d 1070

**Barbara F. ANTHONY, Personal Representative of the Estate of Geraldine Rose Clark**

v.

**Frank H. CLARK.**

**No. 81, Sept. Term, 1993.**

Court of Appeals of Maryland.

July 15, 1994.

Reconsideration Denied Aug. 19, 1994.

580

Clifford R. Bridgford, Frederick, for petitioner.

Paul Victor Jorgensen, Middletown (Oliver J. Cekja, Jr., P.A., Frederick, both on brief), for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, CHASANOW and BELL, JJ., and CHARLES E. ORTH, Jr.* and JOHN F. McAULIFFE, Associate Judges of the Court of Appeals (retired), Specially Assigned.

BELL, Judge.

This estate dispute between the two surviving children of Geraldine Rose Clark, the decedent, Barbara F. Anthony and Frank H. Clark, requires us to determine whether an orphans' court order which dismissed Clark's petition to caveat a will, which, after judicial probate proceedings, had been accepted by the orphans' court as the last will and testament of the decedent, was a final judgment within the meaning of Maryland Code (1974, 1989 Repl.Vol.) § 12–101(f) of the Courts and

---

* Orth, J., participated in the hearing of the case and in the conference in regard to its decision, but died prior to the adoption of the opinion of the Court.

Judicial Proceedings Article.[1] We shall hold, contrary to the conclusion reached by the Court of Special Appeals, that it was and, therefore, consistent with § 12–502(b),[2] an appeal of that order should have been taken within thirty days of its entry. Accordingly, we shall reverse. The Court of Special Appeals' holding was that, because the orphans' court granted a motion to reconsider the dismissal order and, in fact, did reconsider it, the subsequent order reaffirming dismissal of the petition to caveat was the final judgment from which an appeal lay, notwithstanding that the orphans' court did not change the prior order in any manner.

## I.

The relevant facts are straightforward and largely not in dispute. The decedent died leaving two survivors, Frank H. Clark, the respondent, and Barbara F. Anthony ("Anthony"). Approximately four months after the decedent's death, the respondent filed for probate with the Register of Wills for Frederick County, Maryland, a will executed by the decedent on November 18, 1974, which left everything to him. By administrative probate order, that will was admitted to pro-

---

1. Maryland Code (1974, 1989 Repl.Vol.) § 12–101(f) of the Courts and Judicial Proceedings Article provides:

 (f) *Final Judgment.*—"Final Judgment" means a judgment, decree, sentence, order, determination, decision, or other action by a court, including an orphans' court, from which an appeal, application for leave to appeal, or petition for certiorari may be taken.

Unless otherwise indicated, future code references will be to the Courts and Judicial Proceedings Article.

2. Maryland Code (1974, 1989 Repl.Vol.) § 12–502(b) of the Courts and Judicial Proceedings Article provides:

 (b) *Manner and time of taking appeal.*—An appeal pursuant to this section shall be taken by filing an order for appeal with the register of wills within 30 days after the date of the final judgment from which the appeal is taken. Within 30 days thereafter the register of wills shall transmit all pleadings and orders of the proceedings to the court to which the appeal is taken, unless the orphans' court from which the appeal is taken extends the time for transmitting these pleadings and orders.

Section (a) requires the appeal to the circuit court be taken "from a final judgment of an orphans' court."

bate and the respondent was appointed personal representative of the estate. Subsequently, Anthony filed a Petition For Judicial Probate And To Caveat A Will. With that petition, she filed a will, dated November 27, 1981, and a codicil, dated January 14, 1984, which she requested to be judicially probated. The later will divided the estate equally between the survivors and named Anthony as personal representative. The respondent answered the petition, denying all allegations except the fact of the decedent's death and the lack of other pending proceedings.

Anthony filed an Amended Petition For Judicial Probate, in which she withdrew her request to caveat the earlier will. The respondent's answer to the amended petition denied all pertinent allegations related to judicial probate, thus contesting the petition. Following a judicial probate hearing on August 28, 1991, the orphans' court, on September 11, 1991, ordered that the 1981 will and codicil be accepted as "the valid last Will and Testament of the decedent" and that Anthony be "appointed as personal representative for the above estate, and the appointment of Frank Howard Clark as personal representative is hereby revoked." The respondent did not appeal that order.

On October 4, 1991, the respondent filed a Petition to Caveat, in which he raised as to the 1981 will and codicil thereto, issues of undue influence, testamentary capacity, and the genuineness of the decedent's signature. Anthony, as personal representative of the decedent's estate and an interested party, moved, on October 22, 1991, to dismiss the petition to caveat. As grounds, she proffered that the issues raised had been heard and decided in the judicial probate proceedings and consequently, were barred by res judicata and/or collateral estoppel. The orphans' court agreed; by order dated November 4, 1991, the court granted Anthony's motion to dismiss. The docket entries for that day read:

November 4 Motion to dismiss petition to caveat and order

November 4 Certificate of Service by Register of Wills

The respondent filed his answer to Anthony's motion to dismiss on November 5, 1991. In addition to maintaining that issues he raised were not decided by the judicial probate, he argued that the judicial probate order was not final. He relied on Maryland Code (1974, 1991 Repl.Vol.) §§ 5–406 and 5–207 of the Estates and Trusts Article.[3] Two days later, having received the November 4 order, he filed a Motion For Appropriate Relief, in which he asked the orphans' court to dismiss it. Noting that the order had been signed within the 20 day period which Maryland Rule 6–122[4] allows for "an

---

**3.** Maryland Code (1974, 1991 Repl.Vol.) §§ 5–406 and 5–207 of the Estates and Trusts Article provide:

§ 5–406. *Finality of action in judicial probate.*

Except as provided in §§ 5–207 and 5–407, any determination made by the court in a proceeding for judicial probate is final and binding on all persons.

§ 5–207. *Caveat proceeding.*

(a) *Filing petition to caveat.*—Regardless of whether a petition for probate has been filed, a verified petition to caveat a will may be filed at any time prior to the expiration of six months following the first appointment of a personal representative under a will, even if there be a subsequent judicial probate or appointment of a personal representative. If a different will is offered subsequently for probate, a petition to caveat the later offered will may be filed at a time within the later to occur of

(1) Three months after the later probate, or

(2) Six months after the first appointment of a personal representative of a probated will.

(b) *Effect of petition.*—If the petition to caveat is filed before the filing of a petition for probate, or after administrative probate, it has the effect of a petition for judicial probate. If filed after judicial probate the matter shall be reopened and a new proceeding held as if only an administrative probate had previously been determined. In either case, the provisions of Subtitle 4 of this title apply.

Section 5–407 references subsequent judicial probate proceedings, *i.e.,* when judicial probate may be reopened.

**4.** Maryland Rule 6–122, captioned "Petitions—Generally," provides:

*(a) Generally.*—Except as otherwise provided by the rules in this Title or permitted by the court, an application to the court for an order shall be by petition filed with the Register. The petition shall be in writing *and* shall set forth the relief or order sought, and shall state the legal or factual basis for the relief requested. Except for an initial Petition for Probate filed pursuant to Rules 6–201 and 6–301, the petitioner may serve on any interested person and shall serve on the personal representative and such persons as the court may direct

interested person ... to file a response to ... a Motion [To Dismiss]," he asked the court to hold a hearing on the issues raised in his caveat petition. By order dated November 27, 1991, treating the respondent's answer as a "motion to reconsider" and citing its "additional consideration of the Answer to Motion to Dismiss, and of the testimony elicited at the hearing," the orphans' court

> re-affirm[ed] its dismissal of the Petition to Caveat, finding that testimony was given at the time of judicial probate to satisfy the Court as to decedent's testamentary capacity and absence of undue influence. To relitigate these issues would only serve to rehear issues this Court has already heard and decided, and would not be an economical use of the Court's time.

The respondent's appeal, which was filed on December 17, 1991, was dismissed, on Anthony's motion, by the Circuit Court for Frederick County. Anthony had argued that the November 4, 1991 order was a final order from which an appeal should have been noted within 30 days of its entry. The respondent appealed to the Court of Special Appeals, which, in an unreported opinion, reversed.[5] The court rea-

---

a copy of the petition, together with a notice informing the person served of the right to file a response and the time for filing it.

 *(b) Response.*—Any response to the petition shall be filed within 20 days after service or within such shorter time as may be fixed by the court for good cause shown. A copy of the response shall be served on the petitioner and the personal representative.

 *(c) An Order of Court.*—The court shall rule on the petition and enter an appropriate order.

5. Having decided that the respondent's appeal was from a final judgment, the intermediate appellate court proceeded to address, the merits of the issues the respondent raised, namely:

Whether the orphans' court erred in ruling on the motion to dismiss within the 20 day statutory response period and whether the court erred by ruling on the motion as an *ex parte* application.

Whether the filing of a petition to caveat prevents a judicial probate order from operating as a final order.

Whether the orphans' court erred in ruling that the petition to caveat was barred by the principles of res judicata/collateral estoppel.

Given the view we take of the November 4 order, it is unnecessary that we address these issues.

soned that because the orphans court reconsidered and reaffirmed its decision to dismiss, "the re-affirmance constituted a final appealable decision dismissing appellant's caveat petition and was properly recorded on the docket by the Register of Wills." Slip op. at 6. It was not, the court reasoned, a mere denial of a motion for reconsideration. At Anthony's behest, we granted certiorari to consider this important issue.

## II.

For an appellate court to acquire subject matter jurisdiction, an appeal ordinarily must be from a final judgment or an appealable interlocutory order. *See Estep v. Georgetown Leather,* 320 Md. 277, 282, 577 A.2d 78, 80 (1990). This is also true of appeals from orders of orphans' courts. *See* §§ 12–501 and 12–502. Section 12–101(f) defines "final judgment." It does not specify, however, the elements of finality, leaving that ultimate determination to this Court. *Baltimore City Department of Social Services v. Stein,* 328 Md. 1, 9, 612 A.2d 880, 884 (1992); *Public Service Commission v. Patuxent Valley,* 300 Md. 200, 206, 477 A.2d 759, 762 (1984); *Sigma Repro. Health Center v. State,* 297 Md. 660, 664–66, 467 A.2d 483, 484–486 (1983). We have determined that a judgment is final that is "so far final as to determine and conclude the rights involved in the action, *or* to deny to the party seeking redress by the appeal the means of further prosecuting or defending his rights and interests in the subject matter of the proceeding." *In Re Buckler Trusts,* 144 Md. 424, 427, 125 A. 177, 178 (1924) (emphasis added). *See also Stein,* 328 Md. at 10, 612 A.2d at 884; *Rohrbeck v. Rohrbeck,* 318 Md. 28, 41, 566 A.2d 767, 773–74 (1989); *Sigma Repro. Health Center,* 297 Md. at 665, 467 A.2d at 48. The rationale underlying the use of the disjunctive in that determination was explained in *Horsey v. Horsey,* 329 Md. 392, 401–02, 620 A.2d 305, 310 (1993):

[A] trial court's order sometimes may constitute a final appealable judgment even though the order fails to settle the underlying dispute between the parties. Where a trial court's order has "the effect of putting the parties out of

court, [it] is a final appealable order." *Houghton v. County Comm'rs of Kent Co.,* 305 Md. 407, 412, 504 A.2d 1145, 1148 (1986), and cases there cited. *See, e.g., Wilde v. Swanson,* 314 Md. 80, 85, 548 A.2d 837, 839 (1988) ("an order of a circuit court ... [may be] a final judgment without any adjudication by the circuit court on the merits"); *Doehring v. Wagner,* 311 Md. 272, 275, 533 A.2d 1300, 1301–02 (1987) (trial court's order "terminating the litigation in that court" was a final judgment); *Walbert v. Walbert,* 310 Md. 657, 661, 531 A.2d 291, 293 (1987) (circuit court's unqualified order was a final judgment because it "put Denise Walbert out of court, denying her the means of further prosecuting the case at the trial level"); *Houghton v. County Comm'rs of Kent Co.,* 307 Md. 216, 221, 513 A.2d 291, 293 (1986); *Concannon v. State Roads Commission,* 230 Md. 118, 125, 186 A.2d 220, 224–225 (1962), and cases there cited.

*See also Schlossberg v. Schlossberg,* 275 Md. 600, 612, 343 A.2d 234, 242 (1975), rejecting, as applicable to an orphans' court's judgment or order the requirement that it "finally settles some disputed right or interest of the parties" or be "so far final as to determine and conclude the rights involved in the action" (quoting *Brooks v. Sprague,* 157 Md. 160, 164, 145 A. 375, 377 (1929) and *In Re Buckler Trusts,* 144 Md. at 427, 125 A. at 178). Moreover, the judgment must be intended as an unqualified, final disposition of the matter in controversy. *Sisk & Son v. Friendship Packers,* 326 Md. 152, 159, 604 A.2d 69, 72 (1992); *Rohrbeck,* 318 Md. at 41, 566 A.2d at 773–74. Finally, the judgment must be entered on the docket. *Estep,* 320 Md. at 280–81, 577 A.2d at 79; *Rohrbeck,* 318 Md. at 41, 566 A.2d at 773; *Doehring v. Wagner,* 311 Md. 272, 274–75, 533 A.2d 1300, 1301 (1987). *See also* Maryland Rule 6–171(b) which provides:

*(b) Entry by Register.*—The register shall enter an order or judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, and shall record the actual date of the entry. That date shall be the date of the order or judgment.

*See also* Maryland Rule 2–601, applicable to circuit courts, to the same effect.

 It is well settled, and this Court has consistently held, that orders dismissing, or granting motions to dismiss a plaintiff's entire initial pleading are final and appealable. *See Houghton,* 307 Md. at 221–223, 513 A.2d at 293–94, and cases there cited. Of course, the order must otherwise meet the criteria of final judgments, that is to say, it must also be entered on the court's docket. *See* Rule 6–171(b). *See also Bradley v. Bradley,* 119 Md. 645, 650–52, 87 A. 390, 392–93 (1913) (appeal allowed from orphans' court judgment dismissing caveat). It is not necessary that the docket entry, to be effective, use the term "judgment" or "final judgment". *See Stein,* 328 Md. at 13, 612 A.2d at 886; *Houghton,* 305 Md. at 412–13, 504 A.2d at 1148.

 The November 4th order certainly has the appearance of finality. By disposing completely of the respondent's petition to caveat, it puts the respondent out of court, denying to him the means further to pursue that proceeding in the orphans' court. Furthermore, the terms of the order do not undermine its finality; from its terms, it would appear that the dismissal was intended to be the final disposition.

### III.

 The respondent argues that the final prerequisite for a final judgment has not been met, *i.e.,* a proper record was not made of it in accordance with Maryland Rule 6–171. We do not agree.

The docket entries for November 4, as we have seen, noted "Motion To Dismiss Petition To Caveat and Order." The circuit court certainly found that notation to be a sufficient record of the judgment. The Court of Special Appeals, too, was of the view that the "notation ... was sufficient to indicate that [an] order had been issued in connection with the motion to dismiss the petition to caveat" slip op. at 10; it "indicates that the order was made in conjunction with the motion to dismiss and therefore sufficiently designates the

order." *Id.* at 10–11. To reach this conclusion, the intermediate appellate court, noting that the respondent not having claimed to be without notice of the order, construed the respondent's argument to be "that the error in docketing both the motion and the order on the date the court signed the order precludes the order from being a final judgment."

The respondent argues in this Court, as, in truth, he argued below, that a docket entry that does not reveal the court's disposition of a motion to dismiss, or that is ambiguous as to whether any order has issued, fails to reflect the court's order and, therefore, cannot be final. For support, he directs our attention to *Estep, supra,* 320 Md. at 287, 577 A.2d at 82, in which this Court, construing Maryland Rule 2–601(b) [6] the circuit court equivalent of Maryland Rule 6–171, noted the requirement of "a simple docket entry which would make clear to everyone the disposition of each and every claim in the case," and *Rohrbeck, supra,* 318 Md. at 46, 566 A.2d at 776, in which we said that an order which confirms that decisions were made as to the listed matters, but . . . gives no clue as to what those decisions were" does not comply with Md. Rule 2–601(b). According to the respondent, to be sufficient, the docket entry has to state precisely what the court's ruling was, not simply reflect that a ruling was made.

Neither *Estep* nor *Rohrbeck* involves the situation presented *sub judice;* in neither was the judgment the dismissal of a plaintiff's initial pleading, and, hence, cause of action. In *Estep,* the issue was whether, in determining finality, the court could consider the viability of a claim that had not formally been disposed of. We answered "no," in the process, pointing out, what we said in *Doehring,* 311 Md. at 274–75, 533 A.2d at 1301:

---

6. Maryland Rule 2–601(b) provides:

*(b) Method of Entry—Date of Judgment.*—The clerk shall enter a judgment by making a record of it in writing or the file jacket or on a docket within the file, or in a docket book, according to the practice of each court, and shall record the actual date of the entry. That date shall be the date of the judgment.

[W]hen a trial court makes a ruling which "in substance does finally terminate that case in that court," an appeal could still not be taken until "that ruling becomes embodied in whatever *formal* action is necessary to constitute a final judgment."

*Estep*, 320 Md. at 284, 577 A.2d at 81. Although we noted that "[t]he value of a simple docket entry which would make clear to everyone the disposition of each and every claim in a case cannot be overemphasized," we pointedly did not attempt to define what that docket entry should say.

In *Rohrbeck*, the trial judge announced her decision in open court, directing the clerk "to enter judgment when I get to these because this is going to be the final judgment in the case with the one exception, and that is the extent there are quadros [QDRO'S]," 318 Md. at 37, 566 A.2d at 772, as to which she wanted the parties to submit an order on which they had agreed. The docket entry actually made was:

JUDGMENT ENTERED AS TO CUSTODY, HEALTH, INSURANCE, MARITAL AND PERSONAL PROPER-, TY, SAVINGS ACCOUNTS, ALIMONY, CHILD SUP-PORT, MONETARY AWARD, PENSION PLANS AND ATTORNEYS FEES. ORDER TO BE SUBMITTED.

*Id.* at 39, 566 A.2d at 772–73. The order was not submitted within 30 days. When proposed orders were submitted, the trial judge signed an order declining, on jurisdictional grounds, to consider any of them. We held that, because not intended as the final determination and conclusion of the rights involved, the rulings reflected in the docket entry were not final, As pertinent to the issue *sub judice*, however, we said:

The docket entry of July 13, 1988, does not reflect the recording of a judgment "as directed by the court." It confirms that decisions were made as to the listed matters, but it gives no clue as to what those decisions were. Nor, as we have said, was there any other document in the court file that would have supplied that critical information. Although Judge Bell evidently assumed that the clerk would,

in some way, summarize and record the substance of the rulings she was announcing, that is not what, in fact, happened. For that reason as well, then, the July 13 rulings did not constitute a judgment.

*Id.* at 46, 566 A.2d at 776 (footnote omitted). In the omitted footnote, we observed, "The extemporaneous recitation of multiple or complex rulings from the bench may be fine for letting the parties and their attorneys know what the court's decision is in the case, but because it is the actual judgment that will govern the conduct, fortunes, and affairs of the parties, the court must be especially careful that the judgment itself is clear, complete, and precise." *Id.* at 46 n. 7, 566 A.2d at 776 n. 7.

■ Although a docket entry is required, *see* Rule 6–171(b), it is not necessary in an orphans' court for that entry to summarize the written order; in an orphans' court, it is sufficient if the docket entry reflects that an order was filed.

Prior to January 1, 1991, there were no rules of this Court applicable to orphans' courts, and there was no statewide requirement for the entry of "an order or judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court. . . ." Rule 6–171(b). Such rules, including Rule 6–171, were proposed in the One Hundredth Report of the Standing Committee on Rules of Practice and Procedure, submitted to the Court on March 9, 1988. They were adopted by the Court on June 28, 1990, to be effective January 1, 1991.[7] The general objectives of the Rules were:

1. To create a uniform practice and procedure before the Orphans' Courts and registers of wills of Maryland.

2. To construct a set of rules that can be easily administered by the orphans' courts and registers of wills and understood by lay persons as well as by lawyers. . . .

---

7. The more than two year hiatus between proposal of the Rules and their adoption is explained in the Supplement To The One Hundredth Report of the Standing Committee on Rules of Practice and Procedure, submitted to the Court on February 23, 1990.

3. To provide standard forms, incorporated in the appropriate Rule, to be used in the administration of all estates.

4. To give as much notice as possible to interested persons, consistent with the nature of the proceedings.

One Hundredth Report at 1–2. The supplement contains the recommendation that the Title 2 Rules not apply, as a blanket matter, in orphans' courts, it being deemed advisable, in the interest of simplicity and efficiency, to limit their applicability to specific instances in which advance notice of their intended use has been given to the parties.

Rule 6–171 was patterned after Rule 2–601. The rules are not identical, however, and there is reason to believe that they were not intended to be interpreted identically. As originally proposed, Rule 6–171 consisted of only what was to become subsection (b). To achieve "some greater clarity", proposed Rule 6–171 was combined with proposed Rule 6–462, the latter becoming subsection (a). *See* Supplement to the One Hundredth Report. Thus, Rule 6–171, as finally adopted, consisted of but two subsections; Rule 2–601, on the other hand, consists of three. Rule 6–171(b) is broader than Rule 2–601(b); unlike Rule 2–601, Rule 6–171 applies to all orphans' court orders, including judgments. Further, there is no orphans' court counterpart to Rule 2–601(c) which requires that, after its entry on the docket, a circuit court civil judgment, "except a judgment denying all relief without costs," also be recorded and indexed "in the judgment records of the court."

■■■■ Were Rule 2–601 applicable to this case, it would be necessary to determine with what specificity the clerk is required to make the docket entry of a dismissal of a claim. Because, however, Rule 6–171 is involved that is not required. Rule 6–171(b), we hold, simply requires that it be noted on the docket in an orphans' court that an order has been filed relative to some previously filed paper; the register need not describe on the docket the orphans' court action reflected in the order. Rule 6–171(b) was not intended to require the clerical staffs of the registers of wills to digest and then to

reproduce on the docket the terms of all orders generated by the orphans' courts.

With but a handful of exceptions, orphans' court judges are lay persons who serve part time in their judicial capacities. They cannot be expected to supervise the clerical staffs of the registers of wills in digesting or describing orders. Furthermore, the registers of wills' clerical personnel do not have the same opportunity or necessity for acquiring that skill. There ordinarily are no oral orders in orphans' court-orphans' court rulings usually are not dictated to a court reporter. There are no jury verdicts announced in open court, which must be interpreted and then noted on the docket. Instead, in orphans' courts, an order is a paper writing that is filed in the estate file. Rule 6–171 contemplates that interested persons will read that writing. The purpose of the docket is simply to alert the interested person that an order has been filed.

## IV.

Whether the November 4 order is a final judgment also turns, in part, on the effect of the November 27 order, whether it constituted a grant or a denial of a motion to reconsider the November 4 order. If the former, then it may be possible that the November 4 order could lose its finality; if the latter, it could not.

In the absence of an order staying its effect, *see Hanley v. Stulman*, 216 Md. 461, 467, 141 A.2d 167, 170 (1958), or a rule, *see* Maryland Rule 8–202(c),[8] neither a judgment's finality, nor the running of the time for appeal is affected by the filing, or the denial, of a motion addressed to

---

8. Maryland Rule 8–202(c) provides:

*(c) Civil Action—Post Judgment Motions.*—In a civil action, when a timely motion is filed pursuant to Rule 2–532, 2–533, or 2–534, the notice of appeal shall be filed within 30 days after entry of (1) a notice withdrawing the motion or (2) an order denying a motion pursuant to Rule 2–533 or disposing of a motion pursuant to Rule 2–532 or 2–534. A notice of appeal filed before the withdrawal or disposition of any of these motions does not deprive the trial court of jurisdiction to dispose of the motion.

the reviewing power of the court, *e.g.,* motion to set aside, modify or reconsider a judgment. *See Unnamed Atty. v. Atty. Griev. Comm'n,* 303 Md. 473, 484, 494 A.2d 940, 946 (1985). These principles are fully applicable to orphans' court proceedings. *Thomason v. Bucher,* 266 Md. 1, 5–6, 291 A.2d 437, 439 (1972). In that case, we offered the rationale for the rule. After noting the desirability of prompt settlement and distribution of estates, 266 Md. at 4–5, 291 A.2d at 439, the Court stated:

> There is foundation neither in law nor policy for appellant's contention that the filing of a motion for reconsideration extended the appeal period so that a new thirty-day period commenced on June 11, 1971 and that yet another thirty-day period began to run on July 28, 1971, when the Orphans' Court granted appellee's motion ne recipiatur to the revised first account. The fact that each move by the appellant challenging an adverse decision of the Orphans' Court was made within thirty days of the court's decision is immaterial, except to illustrate the evil which the statute seeks to avoid. To allow the period for the running of the appeal to be extended *ad infinitum* by the filing of one motion or petition after another—all in essence attacking the same decision—would be the antithesis of prompt and orderly settlement of estates.

 Although the filing or denial of a motion for reconsideration does not extend the time for appeal, the "grant" of the motion may. That will occur if the court also revises, or somehow changes, the judgment. *See Gluckstern v. Sutton,* 319 Md. 634, 651, 574 A.2d 898, 906 (1990); *Yarema v. Exxon Corp.,* 305 Md. 219, 240–241, 503 A.2d 239, 250 (1986); *Unnamed Atty. v. Atty. Griev. Comm'n,* 303 Md. 473, 484, 494 A.2d 940, 946 (1985); *Brown v. Baer,* 291 Md. 377, 387, 435 A.2d 96, 101 (1981). The rule was stated in *Yarema* :

> "when a motion ... to revise a final judgment is filed within thirty days and the circuit court in fact revises the judgment, and there has been no intervening order of appeal, the revised judgment becomes the effective final judgment in the case." *Id.* [305 Md.] at 240–41, 503 A.2d at 250.

To be sure, those cases were decided under Maryland Rule 2–535(a) [9] or its predecessor, Rule 625a,[10] which ordinarily has no applicability to orphans' court proceedings.[11] But, as the Court said in *Thomason,*

> The mere fact that formal rules have not been adopted by the Orphans' Court does not dictate that it must function in a procedural vacuum, particularly in view of the rules long made clear by the decisions of this Court.

266 Md. at 5, 291 A.2d at 439, citing and relying on *Hayman, Adm'r v. Messick,* 252 Md. 384, 392, 249 A.2d 695, 699 (1969), the cases cited therein, and some of the cases hereinbefore cited. If the consequences identified in *Thomason* are to be avoided, a rule requiring more than simply the grant of the motion is necessary.

In concluding that the November 27 order was the final judgment, the Court of Special Appeals reasoned that, rather than being "merely, as contended by appellee, a denial of the motion for appropriate relief," "the orphans' court reconsidered and reaffirmed its decision to dismiss appellant's caveat.

---

9. Maryland Rule 2–535(a) provides:

> *(a) Generally.*—On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534.

10. Former Rule 625a. provided:

> For a period of thirty days after the entry of a judgment or thereafter pursuant to a motion filed within such period, the court shall have reviewing power and control over such judgment. After the expiration of such period the court shall have reviewing power and control over such judgment, only in case of fraud, mistake or irregularity.

11. *See,* however, Maryland Rule 6–461, which provides:

> *(a) Discovery Rules.*—Discovery in accordance with the Rules in Title 2, Chapter 400 is available in any court proceeding on a contested matter.
>
> *(b) Other Rules.*—In any proceeding in which an issue of law or fact is in controversy, the court, on petition of a party or on its own motion and after notice to all persons who may be affected by the proceeding and an opportunity to be heard, may apply other rules in Title 2. The petition and notice shall state the specific rules in Title 2 that the court is requested to apply.

The reaffirmance constituted a final appealable decision dismissing appellant's caveat petition and was properly recorded on the docket by the Register of Wills." Slip op. at 6. In its November 27 order, the orphans' court explained:

A Petition to Caveat was filed by Frank Clark on October 4, 1991, challenging the validated Will on the grounds of testamentary capacity and undue influence, and, in response, a Motion to Dismiss Petition to Caveat was filed by Barbara Anthony on November 4, 1991.[12] Because it is the opinion of this Court that the issues raised in the Petition to Caveat, specifically testamentary capacity of the decedent and subjection to undue influence at the time of execution of her Will, were raised and addressed during testimony given at the hearing of August 28, 1991, the Court granted the Motion to Dismiss Petition to Caveat on November 4, 1991.

An answer to Motion to Dismiss Petition to Caveat was filed on November 5, 1991, following the dismissal of Petition to Caveat. This Court is treating the Answer to Motion to Dismiss Petition to Caveat as a motion to reconsider the Petition to Caveat and motion to dismiss, prompting the Order herein. After additional consideration of the Answer to Motion to Dismiss, and of the testimony elicited at the hearing, this Court re-affirms its dismissal of the Petition to Caveat, finding that testimony was given at the time of judicial probate to satisfy the Court as to decedent's testamentary capacity and absence of undue influence. To relitigate these issues would only serve to rehear issues this Court has already heard and decided, and would not be an economical use of the Court's time.

Implicitly, the orphans' court purported to "grant" the respondent's motion for reconsideration and to have, in fact, "reconsidered its prior order dismissing the caveat petition. That the orphans' court may have so characterized its actions is not binding on the Court. We look to the substance, rather than the form, of the subject action. As we have seen, in

---

**12.** The Motion To Dismiss was filed on October 22, 1991. *See* note 7 *supra.*

order for the "grant" of a motion for reconsideration to have any effect on the order reconsidered, it must be followed by the passage of a revised order.

■ The Court of Special Appeals' characterization of the orphans' court's action was more explicit, but no more effective. Notwithstanding that court's characterization, the November 27 order was simply a denial of the motion for reconsideration. It certainly did not in any way change or revise the November 4 order. That it explained why it denied the motion does not change its essential nature. In any event, the November 27 order constituted the court's "refusal to reopen [its] previous [November 4] decision." *Hayman*, 252 Md. at 392, 249 A.2d at 699, quoting *Lefever v. Lefever*, 6 Md. 472, 478 (1854). Accordingly, it neither undermined the finality of the November 4 order nor constituted a final judgment from which an appeal would lie.[13]

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY.*

*COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.*

JOHN F. McAULIFFE, Judge Specially Assigned, dissenting.

I agree that the order of November 4, 1991, dismissing Clark's petition to caveat, was a final order. I would hold, however, that the order of November 27, 1991, by which the orphans' court granted Clark's motion for reconsideration,

---

**13.** To the extent that the respondent's argument is that, because it was filed within ten days of the order dismissing his petition, it tolls the time for filing the appeal, it is unpersuasive. As noted already, the Title 2 rules are inapplicable to proceedings in the orphans' court. *See* Maryland Rule 1–101 and Rule 6–461(b). No petition or notice was provided to the parties in this case that Rules 2–532, 2–533 or 2–534 would be applied in this case.

recited the court's complete reconsideration of the motion, including new matter not previously considered, and again ordered the dismissal of the caveat, was a new final order from which a timely appeal was taken.

The majority holds that the orphans' court "purported" to grant the motion for reconsideration, and said it had reconsidered the matter, but that it really did not do so—it in fact denied the motion for reconsideration. *See* 335 Md. 579, 597, 644 A.2d 1070, 1079 (1994). That is simply not so.

The orphans' court acted precipitously, and in violation of Maryland Rule 6–122, when it granted the personal representative's motion to dismiss Clark's caveat without allowing Clark 20 days to answer the motion. Clark brought this to the court's attention by his timely filed answer, which reached the court one day after the entry of the order of November 4, and by his motion for appropriate relief, filed two days thereafter. In his answer, Clark argued that issues generated by his caveat had not been addressed by the orphans' court when judicial probate was granted. He also pointed out to the court that § 5–207(b) of the Estates and Trusts Article, Maryland Code (1974, 1991 Repl.Vol.), provides that when a petition to caveat is filed after judicial probate "the matter shall be reopened and a new proceeding held as if only administrative probate had previously been determined." By his motion for appropriate relief, Clark informed the court that it had erred by not affording him 20 days in which to answer the motion to dismiss, as required by Rule 6–122.

The orphans' court obviously recognized its error. It treated Clark's answer as a motion to reconsider, and it granted the motion and reconsidered the issue. The orphans' court specifically noted that it was now taking into consideration the new matters contained in Clark's answer. This is not a denial of a motion for reconsideration. It is most assuredly, by

definition, by statement of the orphans' court, and by admission of the personal representative,[1] a reconsideration.

The legal effect of the action of the orphans' court was to grant the motion for reconsideration; to reconsider the motion to dismiss, including in its consideration new matter not previously considered; and to enter a new opinion and order, again granting the motion to dismiss. The two orders are different, even though the ultimate action is the same. The difference may be demonstrated by examining what might have been considered in an appeal taken from each order. An appeal taken from the order of November 4 could have addressed the court's error in ruling on the motion without allowing Clark an opportunity to respond.[2] An appeal from the second order granting the motion could not have addressed that issue because the Orphans' Court cured its earlier oversight by reconsidering the matter after Clark had filed his answer.

Moreover, if Clark had appealed only from the November 4 order he may have encountered difficulty arguing on appeal issues generated by his answer, because he had not presented them to the lower court before that court initially decided the motion. *See* Maryland Rule 8–131(a) (providing that "[o]rdinarily, the appellate court will not decide any . . . issue [other than jurisdiction] unless it plainly appears by the record to have been raised in or decided by the trial court . . ."). An appeal from the new order clearly encompasses the issues raised by Clark in his answer, because they were considered, albeit after November 4, by the orphans' court.

The intent of the lower court should be given effect even if the language used by that court is imprecise. *Hanley v.*

---

1. In her brief at page 12, the personal representative states: "The court did just what Mr. Clark asked. It treated his answer as a motion for reconsideration, and reconsidered [the Order of November 4], including his answer."

2. Dismissal of the caveat involved substantial rights, and Clark no doubt would have argued deprivation of due process as well as a violation of the Rule. *See Phillips v. Venker*, 316 Md. 212, 557 A.2d 1338 (1989); *Baker v. Miles & Stockbridge*, 95 Md.App. 145, 620 A.2d 356 (1993).

*Stulman,* 216 Md. 461, 467–68, 141 A.2d 167 (1958); *Hancock v. Stull,* 199 Md. 434, 436–37, 86 A.2d 734 (1952). In legal effect, the orphans' court vacated its November 4 order to cure its error, and entered a new order after a de novo consideration of the issues. If it did not do so, and the majority is correct in its assertion that the court denied Clark's motion for reconsideration, Clark's appeal from that order should be upheld on the ground that the orphans' court abused its discretion in refusing to reopen and reconsider a dismissal entered in violation of Rule 6–122 and without affording Clark an opportunity to respond. Of course, that is not what happened—the orphans' court did reconsider and did enter a new order, based on new considerations, and an appeal should lie from that order.

The Court of Special Appeals was correct in holding that the appeal was timely. I would permit the appeal and reach the merits of the case.

CHASANOW J., joins in this opinion.